| 74  101 |
| 26a 196 |

## Town of Dorr
### *v.*
## Town of Seneca.

1. PAUPERS — *where chargeable.* A person who goes into a county or town and makes no arrangement for a home, and who has no home or fixed actual residence, but hires out and is employed by one or more persons, and so continues for six months, and then becomes a pauper, comes within the second class of persons named in the 15th section of the Pauper act of 1845, and is a charge upon such town or county.

2. RESIDENCE — *actual and apparent.* Actual residence is determined by intention and acts, whilst apparent residence consists of acts without intention coupled with them.

3. A person being unmarried and employed away from his former home, without any intention of returning, or of making the place where employed his actual, fixed and permanent residence, has no actual place of residence, but he has a residence at the place of such employment within the meaning of section .15 of the Pauper law of 1845.

4. EVIDENCE — *to prove residence of pauper.* In a suit where the question is as to the place of residence of a pauper, under the act of 1845, it is not improper to prove the statements of the pauper as to where she considered her home previous to the time she became a town charge.

5. Nor is it error in such case to prove what was said by the brothers-in-law of the pauper, in reference to their making a bargain for her wages with those who employed her, as tending to show the relation of the parties, and whether the brothers-in-law regarded their houses as her home.

APPEAL from the Circuit Court of McHenry county; the Hon. THEODORE D. MURPHY, Judge, presiding.

Messrs. SLAVIN & SMITH, for the appellant.

Messrs. COON & CURTIS, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

This was an action brought by the town of Dorr against the town of Seneca, to recover for the expense of keeping a pauper claimed to be chargeable to the latter. A trial was had by the court and a jury, resulting in a judgment in favor of the town of Seneca, from which this appeal is prosecuted.

It is first urged that the court below erred in the admission of evidence. The main question in the case was, as to the residence of the pauper at the time and for the preceding six months to her becoming a town charge. This being the question, it was not improper to prove her statements as to where she considered her home previous to the time she became a town charge. Nor was it error to prove what was said by her brothers-in-law in reference to their making a bargain for her wages with those who employed her from the time she came to the country. It tended to show the relation of the parties to each other, and whether the brothers-in-law regarded their houses as her home. But even if it did not, still it could not have misled the jury in their finding.

It is next urged that the finding is not supported by the evidence in the case. We think it tends strongly to prove that the pauper regarded Albright's as her home. She left her child there and paid its board from her earnings, from her arrival in this country until the commencement of this suit. She left a bed there in like manner, and it was stipulated that the persons should bring her there or to Kneebush's, who lived near to Albright's, as often as once in four weeks, they imposing the condition when bargaining for hiring her to different persons, and she called Albright's her home, and had contracted with him to board her when she was out of employment.

Opposed to this is the fact that she hired out for two years and nine months before she became a charge, with persons residing in the town of Seneca; and the two brothers-in-law testify that she had no home with them, or, in fact, at any place.

But they evidently swore as to their conclusions as to what constituted a home, and not to facts from which a home might be inferred. It is apparent that it was understood that when out of employment she would return to Albright's, and remain until she could again obtain work. It may be she had no such contract as could be enforced, but such was the arrangement and understanding among the parties, and the evidence was sufficient to warrant the jury in finding that she and Albright understood and intended that his house was her home, when she was out of employment.

But exceptions are taken to the instructions given for the defendant. To determine whether they are correct involves the construction of the fifteenth section of chapter 80, R. S. 1845, entitled "Paupers." That section is this: "The term 'residence,' mentioned in this chapter, shall be taken and considered to mean the actual residence of the party, or the place where he or she was employed; or, in case he or she was in no employment, then it shall be considered and held to be the place where he made it his or her home." The first section of the amendatory act of 1861 provides that any person becoming chargeable as a pauper in this State shall be chargeable as such in the county in which he or she resided at the commencement of six months immediately preceding his becoming so chargeable.

The fifteenth section seems to have provided for three different conditions of residence. The first is where the pauper has a fixed, well-known, permanent place of abode. The second is where such person has no such abode, but has been employed by some one else; and the third is where the person has no fixed permanent place of abode, nor has had any employment as specified, when the place the party made his or her home is regarded the place of residence, and the place where chargeable. In each of these three cases, the status, or condition specified by the statute, must have existed at the commencement of the six months before the party became chargeable.

We are now brought to consider the question as to which of the three classes made by this statute this pauper belongs. She evidently does not to the last, but must to either the first or second class. Did she, according to the first clause, have a permanent, fixed place of abode, or residence, at Albright's ? She, no doubt, left Germany with the fixed purpose of reaching Kneebush's, in the town of Dorr. She arrived there, and, as far as her intention and acts could do so, with a single woman, that undeniably became her home for a time. She had no other, nor did she then or ever afterwards claim any other. She made an arrangement, intended to be permanent, that Albright's should be her home when out of employment. Nor is there any evidence that this arrangement was ever changed. She always spoke of Albright's or Kneebush's as her home.

She left her child and her little property at Albright's, and it was never removed from the town, and only temporarily to Kneebush's on one occasion. She, in pursuance to her agreement, paid him two dollars a week for her board at his house, during the time she was out of employment, and boarded with him. This evidence tended strongly to show that Albright's was the place of her actual and permanent residence, and fully warranted the jury in finding that it was, and that the town of Dorr was liable for her support.

Where a person comes into a county or town, and makes no arrangement for a home, but hires out and is employed by one or more persons, and such a person has no home or fixed actual residence, such person falls within the second class of persons fixed by the 15th section of the pauper act.

It is of frequent occurrence that persons hire for wages constantly away from their father's house, and yet they and all others know that their actual residence is with their father, although they as seldom return to their father's as did the pauper in this case return to Albright's. Nor do such persons usually do more, if even as much, to retain such actual residence as this pauper did. And yet they vote and exercise all

the rights of residents and citizens in the municipal division in which the father resides, and their right to do so is never challenged or doubted.   Persons frequently leave their homes for years, intending to return, engage in business abroad, or find employment, and acquire an apparent new residence, and yet their actual residence is their former home.   Thus the statute intended to make a distinction between the actual and the apparent residence of paupers.   Although the apparent residence of this pauper was in the town of Seneca, the evidence warranted the jury in finding her actual residence in the town of Dorr.

Actual residence is determined by intention and acts, whilst apparent residence consists of acts without intention coupled with them.   A person being unmarried and employed away from his former home, without any intention of returning, or of making the place where employed his actual, fixed and permanent residence, has no actual place of residence, but has an apparent or temporary residence at the place of such employment, and has a residence at the place of employment under the second class of the statute.

In this view of the statute the court below committed no error in giving the instruction asked by defendant.   Although they may not be literally accurate, they announce correct legal propositions, and could not have misled the jury in finding their verdict.

It then follows that the instructions given were proper, and we perceive no error for which the judgment should be reversed, and the same is affirmed.

*Judgment affirmed.*